<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Civil Action No.  (01-4377)

_____

**Thelda Lambert**,                                     :
                Plaintiff,           :
                                                  :
                v.                               :    <u>**OPINION**</u>
                                                  :
**Jo Anne B. Barnhart**,                        :
Commissioner of Social Security         :
                Defendant.         :
_____

Patricia M.  Franklin, Esq.
Counsel for Plaintiff
P.O. Box 32207
81 Halsey Street
Newark, New Jersey 07102

    *(Attorney for Plaintiff)*

CHRISTOPHER J. CHRISTIE, United States Attorney
Peter G. O'Malley, Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102

    *(Attorney for Defendant)*

**MARTINI, District Judge:**

    Plaintiff Thelda Lambert ("Lambert") brings this action pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3) of the Social Security Act, seeking review of a final determination by the

Commissioner of Social Security ("Commissioner") denying her application for Disability

1

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits.  There was no oral argument.  Fed. R. Civ. P. 78.  For the following reasons, the Commissioner's decision is **AFFIRMED**.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Lambert was born on December 7, 1937 and is currently 68 years old.  (Record at 58, 104 [*hereinafter* "R"].)  She has a twelfth grade education and, from 1982 to 1991, she worked mostly as a secretary, word processor, and typist.  (*Id*. at 104.)  Lambert alleges that she became disabled in 1991 due to headaches, dizziness, arthritis in the back, legs, and arms, along with hypertension.  (*Id*. at 99.)

On May 1, 1998, Lambert filed applications for DIB and SSI benefits, which were denied initially and on reconsideration.  (*Id*. at 15.)  Thereafter, Lambert requested a hearing by an administrative law judge ("ALJ").  (*Id*.)  A hearing was held on June 13, 2000 before Administrative Law Judge Joel H. Friedman ("ALJ Friedman").  (*Id*.)  In a decision dated April 27, 2001, ALJ Friedman denied Lambert's application.  (*Id*. at 16.)  ALJ Friedman first noted that there is virtually no record evidence for the period before June 30, 1995.  (*Id*. at 17.)  He then discussed in detail the reports of Dr. Joseph Aaron, Lambert's treating physician, Dr. Maria Vastesaeger, a consultative examiner retained by the Commissioner, Lambert's own subjective complaints of pain, and other evidence.  (*Id*. at 18-19.)  From this evidence, ALJ Friedman found that Lambert's arthritis and hypertension were "severe" impairments.  (*Id*. at 19.)  ALJ Friedman concluded, however, that these impairments were not severe enough to meet any of the enumerated impairments that entitle a claimant to disability benefits.  (*Id*.)  ALJ Friedman next set forth the standards by which he evaluates the medical and other evidence in making his

residual functional capacity ("RFC") determination.  (*Id*.)  Following these standards, ALJ Friedman discussed the reports of Dr. Aaron and Dr. Vastesaeger, Lambert's own subjective complaints of pain and her testimony, and also findings of fact by the State disability agency's non-examining experts and physicians.  (*Id*. at 19-21.)  He then concluded that Lambert retained a RFC for the full range of work at the sedentary exertional level.  (*Id*. at 21.)  Finally, ALJ Friedman evaluated the requirements of Lambert's past relevant work and found that they were within her RFC of sedentary work.  (*Id*. at 21.)  Applying these findings, ALJ Friedman concluded that Lambert is not disabled.  (*Id*.)  Therefore, ALJ Friedman denied Lambert's request for benefits.  (*Id*. at 23.)  Lambert timely appealed ALJ Friedman's decision to this Court.

## II.     STANDARD OF REVIEW

An individual may be entitled to DIB or SSI benefits upon a finding of "disability" as defined by the Social Security Act.  The term "disability" is defined as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A) and 1382c(3)(A); *see also* 20 C.F.R. § 404.1505(a).  "An impairment is not disabling unless it is of such severity that the claimant 'is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience engage in any other kind of substantial gainful work ... in the national economy.'" *Kelley v. Comm'r of Soc. Sec.*, No. 02-3572, 2004 U.S. Dist. LEXIS 28407, at *17-18 (D.N.J. June 30, 2004) (quoting 42 U.S.C. § 423(d)(2)(A)).

A five-step evaluation process, set forth in 20 C.F.R. § 404.1520, is used to evaluate

3

whether or not an individual is disabled. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118 (3d Cir. 2000). In step one, the Commissioner determines whether the person is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Burnett*, 220 F.3d at 118. In step two, the Commissioner must next determine whether the claimant is suffering from a severe medical impairment. 20 C.F.R. § 404.1520(c). If the claimant cannot show her impairment is severe, she is ineligible for disability benefits. *Id*. However, if the claimant demonstrates a severe medical impairment, the Commissioner must determine in step three whether the impairment meets or equals an impairment listed by the Commissioner as creating a presumption of disability. *Id*. at § 404.1520(d). If the claimant's severe impairment satisfies step three of the analysis, the Commissioner will find the claimant disabled without considering other factors such as age, education, and experience. *Id*. at § 404.1520(d). Conversely, if the impairment is not equal to any listing, the Commissioner must proceed to steps four and five. *Burnett*, 220 F.3d at 118. In step four, the Commissioner determines if the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(e). The claimant has the burden of demonstrating her inability to perform past relevant work. *Burnett*, 220 F.3d at 118 (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)). If the claimant does not have the capacity to resume her past work, the evaluation will continue to the fifth step. *Id*. at 118. At the fifth step, the burden shifts to the Commissioner to demonstrate the claimant is capable of performing some other available work in the national economy, taking into consideration the claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(f); *Burnett*, 220 F.3d at 118. If the claimant cannot perform other work in the national economy, the

Commissioner must grant disability benefits to the claimant.

In reviewing ALJ Friedman's decision, the district court exercises plenary review over his legal conclusions and is bound by his factual findings that are supported by substantial evidence, *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000), as the court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

## III.   DISCUSSION

Lambert raises numerous arguments challenging ALJ Friedman's decision as not being supported by substantial evidence or as being erroneous as a matter of law. Specifically, Lambert raises three broad arguments before the Court. First, Lambert contends that ALJ Friedman failed to properly evaluate her subjective complaints of pain. (Pl.'s Br. at 15.) Second, Lambert contends that ALJ Friedman's step three analysis is erroneous as a matter of law and is not supported by substantial evidence. (*Id*. at 25.) Third, Lambert asserts that substantial evidence does not support ALJ Friedman's finding that Lambert retains a RFC of sedentary work and thus an ability to return to her past clerical work and her work as a secretary or typist.[1] (*Id*. at 28.)

---

[1] Lambert also raises in her brief the argument that ALJ Friedman erred as a matter of law in assessing her RFC. (Pl.'s Br. at 25.) Lambert supports this argument, however, by challenging ALJ Friedman's factual determinations. Indeed, after reviewing ALJ Friedman's opinion, it is clear to the Court that the ALJ applied the appropriate legal standards throughout his RFC analysis. Thus, the Court's discussion will focus on whether or not substantial evidence

A.  **ALJ Friedman's Evaluation of Lambert's Subjective Complaints of Pain Is Based On Substantial Evidence and Is Not Erroneous as a Matter of Law**

Lambert argues that ALJ Friedman made three errors in evaluating her subjective complaints of pain.  First, Lambert argues that ALJ Friedman applied an erroneous standard to evaluate and reject her subjective complaints of pain.  (*Id*. at 15.)  Second, Lambert argues that ALJ Friedman failed to conduct the required pain analysis.  (*Id*. at 17.)  Third, Lambert argues that ALJ Friedman failed to properly evaluate all of her relevant claims.  (*Id*. at 18-24.)

1.  **ALJ Friedman Applied the Appropriate Standard to Reject Lambert's Pain Complaints**

Lambert first argues that ALJ Friedman erred by applying an incorrect standard to reject her subjective pain complaints. (*Id*. at 15.)  Specifically, Lambert relies upon one sentence in ALJ Friedman's opinion which states, "[t]he testimony and statements on the record concerning the claimant's impairments are found credible only to the extent these subjective reports are consistent with the objective medical record."  (R. at 21.)  Lambert claims that this was an incorrect standard for discrediting her subjective complaints of pain.  (Pl.'s Br. at 15.)

An ALJ is entitled to determine if subjective complaints of pain are consistent with both the objective medical evidence and other evidence on the record, including claimant's own statements.  20 C.F.R. §§ 404.1529 and 416.929(a).  Furthermore, testimony of subjective pain is entitled to great weight, particularly when supported by competent medical evidence, but an ALJ may reject a claim of disabling pain where she has considered the subjective pain, specified her reasons for rejecting the claim, and has supported her conclusion with medical evidence on the record.  *Garcia v. Comm'r of Soc. Sec.*, No. 03-3775, 2004 U.S. App. LEXIS 7573, at **10-11

---

supports ALJ Friedman's RFC determination.

6

(3d Cir. Apr. 16, 2004).

Lambert's contention that ALJ Friedman applied an incorrect standard to evaluate her subjective complaints of pain is without merit. After reviewing ALJ Friedman's discussion in its entirety, it is clear to the Court that the disputed sentence is merely a reformulation of the appropriate standard. The Court bases its conclusion on ALJ Friedman's earlier and clearer articulation of the standard by which he evaluated Lambert's subjective allegations and complaints. (R. at 19.) Prior to evaluating Lambert's RFC, ALJ Friedman stated: "In making this assessment, the undersigned Administrative Law Judge has considered all of the claimant's reported symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." (*Id*.) This is a correct statement of the applicable standard set forth in 20 C.F.R. §§ 404.1529 and 416.929(a). Thus, ALJ Friedman did not err in applying the proper legal standard to evaluate Lambert's pain complaints.

## 2. ALJ Friedman Conducted the Required Pain Analysis

Lambert also argues that ALJ Friedman failed to conduct the required pain analysis. Specifically, Lambert argues that ALJ Friedman did not make a threshold finding as to the existence of a medically determinable impairment, and that he did not consider the effect of Lambert's alleged pain on her ability to work pursuant to SSR 96-8p.[2] (Pl.'s Br. at 17.) A review of ALJ Friedman's decision, however, clearly indicates that he conducted the required pain analysis.

---

[2]SSR 96-8p can be found in its entirety on the web at:
http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-08-di-01.html

In his decision, ALJ Friedman evaluated the medical evidence from Dr. Aaron and Dr. Vastesaeger and Lambert's own testimony to conclude that Lambert's "arthritis and hypertension are 'severe' impairments within the meaning of the Regulations of the Social Security Administration ... " (R. at 19.)  This constitutes a threshold finding as to the existence of a medically determinable impairment.  *See Jones v. Comm'r of Soc. Sec.* No. 03-2212, 2003 U.S. App. LEXIS 26662, at **1-4 (3d Cir. Dec. 10, 2003); *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003).  Thus, ALJ Friedman fulfilled the first requirement of the disputed pain analysis.

ALJ Friedman also considered the effect of Lambert's pain on her ability to work.  First, he found that Lambert raised a number of impairments that are not reflected in the medical evidence of record, either by her reports or by objective medical findings.  (R. at 18.)  Second, ALJ Friedman found that the frequency with which Lambert claims to take narcotic pain relief medications is inconsistent with the prescription refills she receives.  (*Id*. at 18-19.)  Third, ALJ Friedman noted that Lambert testified that she sometimes lies down to relieve pain, but he found that this claim is inconsistent with her infrequent use of pain medications.  (*Id*. at 20.)  Fourth, ALJ Friedman concluded that Lambert's reports that her activities of daily living and social activities are virtually precluded is not consistent with the medical evidence of record.  (*Id.*) Given this thorough discussion of Lambert's pain complaints and the original threshold determination of Lambert's arthritis and hypertension, the Court cannot find that ALJ Friedman failed to conduct the required pain analysis.

> 3. **ALJ Friedman Properly Evaluated and Rejected Lambert's Relevant Claims**

Lambert makes numerous claims concerning her various subjective pain complaints, arguing that ALJ Friedman failed to fully evaluate each of these claims and to specify his reasons for finding them not credible. (Pl.'s Br. at 18-24.) Specifically, Lambert argues that substantial evidence does not support ALJ Friedman's conclusions regarding her back impairment, headaches, knee impairment, dizziness, and finger pains.[3] (*Id.*)

An ALJ need not use particular language or adhere to a particular format in making his determination, but must sufficiently develop the record and explain his findings to permit meaningful review. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d. Cir. 2004). Furthermore, "when the medical testimony or conclusions [presented to an ALJ] are conflicting, the ALJ is not only entitled but required to choose between them." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Such a decision, though, need not "be accompanied by a medical or scientific analysis which would be far beyond the capacity of a non-scientist." *Id.*

With the foregoing in mind, the Court concludes that ALJ Friedman's analysis of the record was more than sufficient to permit meaningful review. In his discussion of each doctor's report, ALJ Friedman clearly discussed Lambert's hypertension, arthritis, dizziness, and other symptoms not alleged as disabling.[4] (R. at 18.) Furthermore, he gave an explanation as to why

---

[3]Lambert argues that ALJ Friedman failed to evaluate Lambert's headaches. (Pl.'s Br. at 21.) In his discussion of both Dr. Aaron's and Dr. Vastesaeger's reports, however, ALJ Friedman noted Lambert's complaints of headaches, pointing out that Dr. Vastesaeger diagnosed Lambert with chronic daily headaches. (R. at 18.) Despite this finding, Dr. Vastesaeger still found that Lambert could lift up to 40 pounds, carry up to 30 pounds, and had no impairment of her ability to sit, stand, or handle objects. (*Id.*) By accepting Dr. Vastesaeger's RFC assessment which took this impairment into consideration, ALJ Friedman did consider Lambert's complaint of chronic headaches. (*Id.*)

[4]Another subjective allegation that Lambert stresses is missing from ALJ Friedman's analysis is her self-diagnosed cane use. As Lambert herself recognizes, however, Dr.

9

each impairment is not of disabling severity. (*See id.* at 18-21.) ALJ Friedman discussed Lambert's claims in light of the numerous physical findings in the October 17, 1998 report of Dr. Aaron, Lambert's treating physician. He noted that Dr. Aaron believed Lambert was disabled "at the present time" because her blood pressure was "out of control." (*Id.* at 18.) ALJ Friedman also noted that Dr. Aaron found Lambert was limited in her ability to sit, stand, and walk, that she required frequent bed rest during the day to reduce pain in her back, hips, and knees, that she should not perform repetitive lifting, and that she should avoid stressful situations. (*Id.*)

ALJ Friedman then noted, however, that Lambert only received irregular treatment thereafter, continued to have elevated blood pressure but was not lightheaded or short of breath, and was not compliant with her treatment regimen. (*Id.* at 20.) Most importantly, ALJ Friedman stressed that Dr. Aaron's bare conclusion that Lambert was "presently disabled" did not establish that she was unable to work for at least a 12 month period of time. (*Id.*) ALJ Friedman then reached the substantially supported conclusion, with which this Court agrees, that Dr. Aaron's disability determination was not consistent with a disability finding. (*Id.*)

ALJ Friedman also properly evaluated Lambert's claims in light of the report of Dr. Vastesaeger. He noted that Dr. Vastesaeger's diagnosis was of hypertension, chronic daily headaches, postural dizziness, status post syncope times two, nonspecific low back pain, rule out hypercholesteroliemia, obesity, and rule out osteoarthritis in the knees. (*Id.* at 18.) ALJ Friedman also noted Dr. Vastesaeger's numerous physical findings, and Dr. Vastesaeger's

---

Vastesaeger's report indicates Lambert does not medically require such an assistive device. (Pl.'s Br. at 22; R. at 169-170.) By accepting Dr. Vastesaeger's RFC assessment which took this impairment into consideration, ALJ Friedman did consider Lambert's possible need of an assistive device. (*Id.*)

10

assessment that Lambert had no impairment of her ability to sit, stand, or handle objects, that Lambert could walk two blocks before experiencing shortness of breath and back pain, and that Lambert could lift 40 pounds and carry 30 pounds. (*Id.*) From this, ALJ Friedman reached the substantially supported conclusion that Lambert's exam was generally unremarkable. (*Id.*) ALJ Friedman thus evaluated all of Lambert's relevant claims and rejected their alleged severity in light of all the medical evidence of record. Given his thorough and well-supported discussion of this evidence, we cannot hold that ALJ Friedman's findings regarding Lambert's subjective assertions of pain is not supported by substantial evidence.

**B.     Substantial Evidence Supports ALJ Friedman's Step Three Analysis**

Lambert also argues that ALJ Friedman's step three analysis does not meet the minimum requirements set forth in *Burnett*, which requires that a rationale be provided regarding the Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4, and that an explanation be provided as to why the claimant's impairments meet or do not meet the listings.[5] *Burnett*, 220 F.3d at 119-120. (Pl.'s Br. at 25.) Specifically, Lambert argues that ALJ Friedman failed to evaluate whether her arthritis meets or equals the criteria of Listing 1.02 or Listing 1.04, and that he failed to provide a rationale regarding his decision. (*Id.* at 25.) Listing 1.02 concerns major dysfunction of a joint, while Listing 1.04 covers disorders of the spine.[6] "To show that [her]

---

[5] Lambert also argues that ALJ Friedman's step three analysis is flawed because he failed to analyze the effect of her obesity on her ability to work. (Pl.'s Br.at 25.) This is clearly false. In his evaluation of Dr. Vastesaeger's report, ALJ Friedman noted that Lambert was diagnosed with obesity. Despite this diagnosis, Dr. Vastesaeger's report indicated that Lambert was not disabled. (*See* R. at 18.) By accepting Dr. Vastesaeger's RFC assessment which took this impairment into consideration, ALJ Friedman did consider Lambert's obesity.

[6] Listing 1.02 and Listing 1.04 state:

11

impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis added)." "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id*.

ALJ Friedman's decision that Lambert's arthritis does not meet or equal Listings 1.02 and 1.04 is based upon substantial evidence. Specifically, ALJ Friedman noted that Dr. Aaron, who is Lambert's own treating physician, diagnosed Lambert with arthritis but ultimately opined that she was disabled at the present time because of her blood pressure and not because of her

---

1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.02; 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04.

arthritis. (*Id*. at 18, 148-149.) This undermines Lambert's argument that her arthritis meets or equals Listing 1.02 or 1.04 because her own treating physician did not find her arthritis to be of a disabling severity. *See id.*; *see also Bowen v. Yuckert*, 482 U.S. 137, 127 (1987) (noting that a listed impairment is one that is "so severe as to preclude substantial gainful activity"). Furthermore, Listing 1.02 requires an inability to ambulate effectively,[7] while Listing 1.04 requires evidence of nerve root compression.[8] 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.02; 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. However, ALJ Friedman noted that, while Dr. Vastesaeger diagnosed Lambert with nonspecific low back pain, Lambert's lumbosacral spine examination was normal, that Lambert had normal but painful range of motion in her knees, that her gait was normal, and that Lambert did not need a cane or crutches. (*Id*. at 18.) These findings are supported by the record. (*Id*. at 171.) Therefore, since Dr. Vastesaeger's report shows that neither the criteria of 1.02 or 1.04 is met, we cannot find that ALJ Friedman erred in determining that Lambert's impairments do not meet a listing.[9]

---

[7]Effective ambulation is defined as: "capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living, and the ability to travel without companion assistance to and from a place of employment or school." This definition can be found at http://www.disabilitydoc.com/effective-ambulation-assistive/ along with examples of ineffective ambulation which include, *inter alia*, an inability to walk without an assistive device.

[8]Nerve root compromise occurs when there is pressure placed on one of the nerves located in the spinal column, usually due to the internal disruption of a disc. *See* http://chirogeek.com/003_IDD-Tutorial.htm. Patients with this condition do not have a normal lumbosacral spine examination. *See* http://www.spineuniverse.com/displayarticle.php/article76.html

[9]In addition to these findings, which contradict Lambert's claim to meet or equal Listing 1.02 or Listing 1.04, the Court also notes that Lambert's medical records do not provide any evidence to indicate she can meet even the majority of the requirements found within Listing 1.02 and Listing 1.04. For Listing 1.02, Lambert cannot show a gross anatomical deformity or findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction,

As to Lambert's argument that ALJ Friedman failed to provide generally his rationale regarding the Listing of Impairments (Pl.'s Br. at 25), the Court disagrees. The Court first notes that an ALJ's step three analysis is sufficient where "the court is able to discern the particular listed impairments considered in a claimant's case based on the ALJ's discussion of the relevant evidence and his related conclusion that the claimant's combined impairments are not severe enough to meet or medically equal one of the listed impairments." *Arroyo v. Comm'r of Soc. Sec.*, No. 04-4739, 2005 U.S. App. LEXIS 24753, at \*\*7 (3d Cir. Nov. 16, 2005). The Court also notes that "there is no requirement that the ALJ must identify or analyze the most relevant Listing." *Ochs v. Comm'r Soc. Sec.*, No. 05-4421, 2006 U.S. App. LEXIS 16376 (3d Cir. June 29, 2006) (citation omitted). ALJ Friedman's opinion reveals that he identified Lambert's arthritis and hypertension as the impairments under consideration. (R. at 19.) He then thoroughly discussed the formal diagnoses and physical findings of both Dr. Aaron and Dr. Vastesaeger, and assessed the credibility of Lambert's subjective pain allegations in light of these doctors' reports. (*Id*. at 18-19.) Ultimately, he reached his conclusion that there is no evidence that any of Lambert's impairments meet a listing. (*Id*. at 19.) Given his detailed discussion of the medical evidence he relied upon, this court cannot find that ALJ Friedman failed to provide his rationale regarding his step three determination.

C.    **Substantial Evidence Supports ALJ Friedman's RFC Determination**

Lambert argues that ALJ Friedman made two errors in assessing her residual functional capacity. First, she argues that ALJ Friedman failed to perform a function by function

---

or ankylosis. For Listing 1.04, Lambert also cannot show motor loss, muscle weakness, or sensory or reflex loss.

assessment of her ability to perform work requirements. (Pl.'s Br. at 26-27.) Second, she contends that substantial evidence does not support ALJ Friedman's assessment that she can return to her past relevant work. (*Id*. at 29.)

### 1. ALJ Friedman Performed the Function by Function Assessment of Lambert's Ability to Perform the Exertional and Non-Exertional Requirements of Work

Lambert first argues that ALJ Friedman's assessment of her RFC is erroneous because ALJ Friedman did not perform a function by function assessment of Lambert's ability to perform the exertional and non-exertional requirements of work. (Pl.'s Br. at 26-27.) Residual functional capacity is an administrative assessment of the most work a claimant is able to perform given the limitations imposed by her impairment. 20 C.F.R. §§ 404.1545 and 416.945; SSR 96-8p.

Lambert's contention that ALJ Friedman did not perform a function by function assessment of her ability to work is plainly false. As the Commissioner points out in her brief, after evaluating all of the medical and other evidence of record, ALJ Friedman concluded that Lambert could lift and carry up to ten pounds, stand and walk for up to two hours of an eight hour work day, and sit for six hours of an eight hour work day. (R. at 21; Def.'s Br. at 12.) ALJ Friedman also noted that Lambert would not have to perform significant stooping or crouching since sedentary work is performed primarily in a seated position, and he found that Lambert could make good use of her hands and fingers for repetitive hand-finger actions. (R. at 21.) ALJ Friedman supported his function by function RFC determination with over four pages of analysis in which he properly evaluated the medical and other evidence, assessed its credibility, and explained his reasoning. (*Id*. at 17-22.); *see Tuohy v. Comm'r of Soc. Sec.*, No. 04-2586, 2005 U.S. App. LEXIS 5338, at \*\*12 (3d Cir. Apr. 1, 2005) (holding that ALJ performed function by

15

function analysis upon a similar finding). Thus, this Court cannot find that ALJ Friedman failed to undertake a function by function assessment in making his RFC determination.

### 2. Substantial Evidence Supports ALJ Friedman's Finding that Lambert has the RFC to Return to Her Past Relevant Work

Lambert next contends that ALJ Friedman's determination of her ability to perform sedentary work is not supported by substantial evidence. (Pl.'s Br. at 29.) Specifically, Lambert points to her own subjective complaints of pain to argue that she cannot perform the full range of sedentary work and thus cannot return to her past relevant work.[10] (*Id*. at 30-32.)

"The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Burnett*, 220 F.3d at 118 (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). In making an RFC assessment, impairments "that are medically supported but are also contradicted by other evidence in the record may or may not be found credible -- the ALJ can choose to credit portions of the existing evidence." *Covone v. Comm'r Soc. Sec.*, No. 04-4365, 2005 U.S. App. LEXIS 15783, at **4-5 (3d Cir. July 29, 2005). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reasons for

---

[10]Lambert also argues that ALJ Friedman failed to assess her alleged mental limitations and restrictions (Pl.'s Br. at 31.); however, Lambert did not allege any mental limitations as disabling impairments, nor is there any evidence, besides her own subjective complaints, of any mental limitation. Lambert cites *Plummer v. Apfel* for the proposition that an ALJ has a duty to develop the record when there is a suggestion of a mental impairment. 186 F.3d 422, 432. In *Plummer*, though, the Court noted that at least three physicians, two of whom prescribed anti-depressants, recorded the claimant's alleged psychiatric impairment. *Id*. In the instant case, there is no documented medical evidence of any mental impairment, nor is there any prescribed treatment related to a mental impairment. Indeed, Lambert's only allegation of a mental impairment is in a note made within the margin of an administrative questionnaire in which she claims her pain makes her feel depressed and sometimes cry and lie down a lot. (R. at 125.) In his discussion, ALJ Friedman found that this allegation is not completely consistent with her infrequent use of pain medications. (*Id*. at 20.) Thus, substantial evidence supports ALJ Friedman's RFC assessment in this regard.

discounting such evidence." *Burnett*, 220 F.3d at 121.

     ALJ Friedman properly assessed Lambert's RFC and the requirements of her past relevant work such that substantial evidence supports his determination that Lambert has the RFC to return to her past work. ALJ Friedman dedicated nearly two full pages of his discussion to evaluating Lambert's RFC. (R. at 19-21.) First, he considered and rejected Lambert's subjective pain complaints. (*Id.* at 19-20.) He did so based upon Lambert's infrequent use of pain medication and the medical evidence of record. (*Id.* at 20.) Second, ALJ Friedman also evaluated the State disability determination agency's experts' findings regarding Lambert's ability to perform medium work. (*Id.*) As he did with Lambert's subjective complaints, ALJ Friedman found these findings to be inconsistent with the medical evidence of record, and he rejected their RFC assessment of "medium work" in favor of a more severe disability finding. (*Id.*) Third, ALJ Friedman discussed Dr. Aaron's findings. (*Id.*) He explained that Dr. Aaron's determination that Lambert was disabled "at the present time" is not consistent with a disability finding under the guidelines followed by the Social Security Administration because it is conclusory, is not based upon vocationally relevant activities, and does not establish that Lambert is unable to work for at least a 12 month period of time. (*Id.*) Finally, ALJ Friedman dedicated a paragraph of his discussion to the specific requirements of Lambert's past relevant work as an office clerical worker and word processor. (*Id.*) He noted the specific requirements of her employment as described by Lambert herself, and also noted the requirements of each job as classified in the Dictionary of Occupational Titles. (*Id.*) From this, ALJ Friedman concluded that Lambert "retains the capacity to perform this 'past relevant work,' as she performed it and as generally performed in the national economy." (*Id.*) Thus, ALJ Friedman evaluated the evidence

before him, weighed its credibility, and gave an indication as to the evidence he rejected and his reasons for doing so. Furthermore, because the record supports this analysis, this Court cannot escape the overwhelming conclusion that substantial evidence supports ALJ Friedman's RFC determination that Lambert can return to her past work.

### IV.     CONCLUSION

For the foregoing reasons, this Court finds that the ALJ's analysis was correct as a matter of law and supported by substantial evidence. Consequently the Commissioner's decision denying Disability Insurance Benefits and Supplemental Security Income benefits to Plaintiff Thelda Lambert is affirmed.


**Dated:** August 22, 2006                                                            s/William J. Martini
                                                                                                    **William J. Martini, U.S.D.J.**